## SUPREME COURT.

JACOB GRANTMAN, by his guardian, JOHN GRANTMAN agt. GEORGE THRALL.

The Code (§ 316) makes the *guardian of an infant, plaintiff*, responsible for *costs* of the action, when they are adjudged against such infant, and provides that, "payment thereof *may* be enforced by *attachment.*" This means a process in the nature of a *ca. sa.* And it is not strictly necessary for the defendant to first issue his *execution* against the infant, in order to fasten the liability upon the guardian and entitle the defendant to his attachment, though this is perhaps the better practice. Nor is there any necessity of an order of the court to first bring the guardian into *contempt*, before the attachment can issue.

The issuing of the attachment results simply from the adjudication against the infant plaintiff. The measure of liability and the means of enforcement are prescribed by law, and the court cannot refuse to a party on a proper application the process which the law in terms gives him.

The word "may" in statutes has always been held to be *imperative*, and equivalent to *must* or *shall*, whenever the public or third persons have a claim *de jure* that the power should be exercised.

It is clear that the *poverty* of the guardian is no defense to a motion for the attachment.

*Seventh Judicial District General Term September,* 1866.
*Before* WELLES, E. D. SMITH *and* JOHNSON, *Justices.*

THIS was an appeal by the defendant from an order at special term, denying motion for an attachment against the guardian, for costs of the action. The defendant had judgment for costs of the action, and issued his execution to collect the same, which was duly returned wholly unsatisfied. Thereupon he duly demanded payment of such costs from the guardian, who refused to make payment. Upon an affidavit of the facts and notice, the defendant moved, at special term, for an attachment against such guardian, in the nature of a *ca. sa.*, to enforce such payment. The guardian resisted the motion, upon an affidavit that he had a family dependent

Grantman agt. TTrall.

upon him for their support, and had no real estate whatever and no personal property liable to execution, and had no means by which he could pay.

The court denied the motion for an attachment, but granted the defendant a precept in the nature of a *fi. fa.*

MATHER & MACOMBER, *for defendant.*
J. C. COCHRANE, *for guardian.*

*By the court,* JOHNSON, J. This court decided this precise question at the last December general term, in the case of *Gardner, Guardian* agt. *Joel.* In that case the attachment was granted against the guardian in a case like this, the guardian showing by affidavit, as in this case, his entire want of property subject to execution, and his utter inability, pecuniarily, to pay the costs. That order was affirmed on appeal to the general term, the court holding, both at special and general term, that the facts set out in the affidavit of the guardian, of his want of property, was no answer to the application for the attachment. The Code (§ 316) makes the guardian of an infant, plaintiff, responsible for the costs of the action when they are adjudged against such infant, and provides that " payment thereof may be enforced by attachment." That this means a process in the nature of a *ca. sa.*, admits, I think, of no doubt. It is so understood in all the books of practice, and such is its plain meaning in legal parlance. This, I think, is plainly a remedy given to the defendant in the action to enforce payment of his costs when he becomes entitled to costs in such an action. It is a process given to the party to enforce a liability in his favor which the statute imposes, not conditionally, but absolutely and imperatively. I do not see that, strictly, it is necessary for the defendant in such a case to first issue his execution against the infant, in order to fasten the liability upon the guardian, and entitle the defendant to his attachment, though I should think that the more reasonable and better practice (2 *N. Y. Pr.* 418). Nor do I see that the question of contempt of court, arises in the case. It is simply a liability

which the statute creates, and to enforce payment of which it gives this process. It does not depend upon any order of the court, but results simply from the adjudication against the infant plaintiff. Under the Revised Statutes the next friend of an infant plaintiff was made responsible for costs, but no process was given to the party to enforce payment as now (2 *R. S.* 446, § 2). The mode of enforcing payment was left to the practice of the courts. That mode, according to the course of the practice, was to first bring the party into contempt, and then apply for an attachment. But now both the measure of liability and means of enforcement are prescribed by law, and I do not see how the court can refuse to a party the process which the law in terms gives him. The word *may* in statutes has always been held to be imperative, and equivalent to must or shall, whenever the public or third persons have a claim *de jure*, that the power should be exercised. (*Smith's Com.* 727 ; *The Newburgh Turnpike Co.* agt. *Miller*, 5 *Johns. Ch. R.* 112.) Manifestly, this is a right given to the party, and not a mere discretionary power conferred upon the court. In this view the provision is in no respect in conflict with the provisions of the act of 1847 (*Sess. Laws of* 1847, *chap.* 390, § 2), which is, that " no person shall be imprisoned for contempt of court in not paying costs." But, if it is, the effect of this provision of the Code, enacted several years afterwards, would be to take the particular case out of the general provision. It is clear enough that the poverty of the guardian is no defense to the motion.

The Code does not make either his liability for costs, or the defendant's right to the attachment, depend upon any such conditions ; and I have no doubt that one object the legislature had in view in giving this remedy, was to protect persons from being vexed and harrassed by actions brought in the name of infants by irresponsible guardians. The granting of the process in the nature of a *fieri facias*, was a vain thing, as the guardian shows by his affidavit that he has not now, and had not when the action was commenced, any property to which it could possibly attach. I am of the

opinion, therefore, that the application for the attachment in the nature of a *ca. sa.* was improperly denied, and that the order should be reversed, and the order for the attachment granted, with costs.